WEST/CRS

# United States Court of Appeals
## for the Federal Circuit

FILED
U.S. COURT OF APPEALS
THE FEDERAL CIRCUIT

JAN 3 0 2013

JAN HORBALY
CLERK

2012-5035, -5036, -5043

SHELDON PETERS WOLFCHILD, ERNIE PETERS LONGWALKER,
SCOTT ADOLPHSON, MORRIS J. PENDLETON, BARBARA FEEZOR
BUTTES, WINIFRED ST. PIERRE FEEZOR, AUTUMN WEAVER, ARIES
BLUESTONE WEAVER, ELIJAH BLUESTONE WEAVER, RUBY MINKEL,
LAVONNE A. SWENSON, WILLIS SWENSON, AARON SWENSON,
BEVERLY M. SCOTT, LILLIAN WILSON, MONIQUE WILSON, SANDRA
COLUMBUS GESHICK, CHERYL K. LORUSSO, JENNIFER K. LORUSSO,
CASSANDRA SHEVCHUK, JASON SHEVCHUK, JAMES PAUL WILSON,
EVA GRACE WILSON, BENITA M. JOHNSON, and KEVIN LORUSSO,

Plaintiffs-Cross Appellants,

and

ANITA D. WHIPPLE et al, Descendants of Lucy Trudell, BONNIE RAE
LOWE, et al, Descendants of Joseph Graham, et al, LENOR ANN
SCHEFFLER BLAESER et al, Descendants of John Moose, and MARY
BETH LAFFERTY, et al,

Plaintiffs,

(caption continued on following page)

_____

Appeals from the United States Court of Federal Claims in
Consolidated Case Nos. 03-CV-2684 and 01-CV-0568, Judge Charles F.
Lettow

_____

**WOLFCHILD PLAINTIFFS-CROSS APPELLANTS REPLY BRIEF
TO BRIEFS OF THE UNITED STATES AND AMICI CURIAE
SHAKOPEE MDEWAKANTON SIOUX COMMUNITY, PRAIRIE
ISLAND INDIAN COMMUNITY AND LOWER SIOUX INDIAN
COMMUNITY
(REPLACEMENT)**

ERICK G. KAARDAL
Mohrman & Kaardal, P.A.
33 South Sixth Street, Suite 4100
Minneapolis, Minnesota 55402
612-341-1074

RECEIVED

JAN 3 1 2013

United States Court of Appeals
for the Federal Circuit

and

COURSOLLE DESCENDANTS and ROCQUE AND TAYLOR
DESCENDANTS,
Plaintiffs,

and

DEBORAH L. SAUL, LAURA VASSAR, et al, LYDIA FERRIS et al,
DANIEL M. TRUDELL, et al, and ROBERT LEE TAYLOR, et al, and DAWN
HENRY,
Plaintiffs,

and

RAYMOND CERMAK, SR., (acting individually and under a power of
attorney for Stanley F. Cermak, Sr.), MICHAEL STEPHENS, et al, JESSE
CERMAK, et al, DENISE HENDERSON, DELORES KLINGBERG, SALLY
ELLA ALKIRE, PIERRE ARNOLD, JR.,
GERTRUDE GODOY et al.,
Plaintiffs,

and

JOHN DOES 1-30, WINONA C. THOMAS ENYARD, and KITTO, et al.,
Plaintiffs,

and

FRANCINE GARREAU, et al.,
Plaintiffs,

and

FRANCIS ELAINE FELIX,
Plaintiff,

and

KE ZEPHIER, et al.,

Plaintiffs,

and

LOWER SIOUX INDIAN COMMUNITY,
Plaintiff,

and

PHILIP W. MORGAN,
Plaintiff,

and

REBECCA ELIZABETH FELIX,
Plaintiff,

and

VERA A. ROONEY, et al.,
Plaintiffs,

and
DANNY LEE MOZAK,
Plaintiff-Cross Appellant,

and

DAWN BURLEY, et al.,
Plaintiffs-Cross Appellants,

and

HARLEY ZEPHIER, SR.,
Plaintiff-Cross-Appellant,

and

JOHN DOES 1-433,
Plaintiffs-Cross Appellants,

and

JULIA DUMARCE, et al.,
                    Plaintiffs-Cross Appellants,

and

RAYMOND COURNOYER, SR., et al., JERRY ROBINETTE, et al., SANDRA
KIMBELL, et al., CHARLENE WANNA, et al., and LESLIE LEE FRENCH,
                    et al.,
                    Plaintiffs-Cross Appellants,

and

KRISTINE ABRAHAMSON,
                    Plaintiff-Cross Appellant,

and

VICTORIA ROBERTSON VADNAIS,
                    Plaintiff-Cross Appellant,
                    v.

UNITED STATES,
                    Defendant-Appellant.

_____

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ii

ARGUMENT ............................................................................................ 1

   I.   The 1886 Mdewakaton Group is a Tribe which  neither the Government nor the *Amici Curiae* can contradict under  *Carcieri* and established legal history.......................................................................2

   II.  The 1980 Act and Its Legislative History Do Not Change the Fact That One INIA/IRA Tribe, the 1886 Mdewakanton Group, Exists  Not Three INIA/IRA Tribes...........................................................................7

   III.   The Government's "Facts" Are Full of Admissions and Omissions.............................................................................................15

   IV.   The 1886 Mdewakanton Group is Entitled to Summary Judgment on Its Statutory Fund Claims for Pre-1980 and Post-1980 Community Revenues on All Reservation Lands. ................................19

   V.  The 1886 Mdewakanton Group is Entitled to Summary Judgment on Its Statutory Land Claims.............................................................23

CONCLUSION .....................................................................................35

# TABLE OF AUTHORITIES

## Cases

*Carcieri v. Salazar,* 555 U.S. 379 (2009)....................................................2

*Carpenter v. Shaw,* 280 U.S. 363 (1930)......................................................9

*Chevron U.S.A., Inc. v. NRDC, Inc.,* 467 U.S. 837 (1984) .......................7

*DeCoteau v. District County Court for Tenth Judicial Dist.,* 420 U.S. 425 (1975) ..........................................................................................................9

*Joint Tribal Council of the Passamaquoddy Tribe,* 528 F.2d 370 (1st Cir. 1975)......................................................................................................... 10

*McClanahan v. Arizona State Tax Comm'n,* 411 U.S. 164 (1973) ...........9

*Narragansett Tribe of Indians v. Southern Rhode Island Land Dev. Corp.,* 418 F. Supp. 798 (D.R.I. 1976) ............................................ 24, 31

*Oneida Indian Nation of New York v. New York,* 194 F. Supp. 2d 104 (N.D.N.Y. 2002)........................................................................................ 31

*Quick Bear v. Leupp,* 210 U.S. 50 (1908) ....................................................5

*Rogers v. Frito-Lay, Inc.,* 611 F.2d 1074 (5th Cir. 1980) ........................ 10

*Samish Indian Nation v. United States,* 419 F.3d 1355 (Fed. Cir. 2005) 7

*Skidmore v. Swift & Co.,* 323 U.S. 134 (1944).........................................7

*Smith v. Babbitt,* 100 F.3d 556 (8th Cir. 1996) ................................ 14, 15

*Solem v. Bartlett,* 465 U.S. 463 (1984).......................................................9

*South Dakota v. Yankton Sioux Tribe,* 522 U.S. 329 (1998) ....................9

*St. Louis Baptist Temple, Inc. v. FDIC,* 605 F.2d 1169 (10th Cir. 1979) .3

*TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd.,* 488 F.3d 1282 (10th Cir. 2007)........................................................................................3

*U.S. v. 2,005.32 Acres of Land, More or Less, Situate in Corson County, S.D.,* 160 F.Supp. 193 (D.S.D. 1958) ........................................................9

*United States v. Navajo Nation,* 556 U.S. 287 (2009) ............................27

*United States. v. Burch,* 169 F.3d 666 (10th Cir. 1999) ............................3

*Wolfchild v. U.S.,* 2013 WL 311303 (Jan. 28, 2013) ................................5

*Wolfchild v United States,* 96 Fed. Cl. at 340........................................4, 5

## Statutes

25 U.S.C. § 163 ........................................................................................5

25 U.S.C. § 177 (Indian Nonintercourse Act) ................................. passim

Act of August 19, 1890, ch. 807, 26 Stat. 349 ...........................................1

Act of February 16, 1863, 12 Stat. 642 .....................................................1

Act of June 18, 1934, ch. 576, 48 Stat. 984 (Indian Reorganization Act) (codified as amended at 25 U.S.C. § 461-479)..................................1, 20

Act of June 29, 1888, ch. 503, 25 Stat. 217, 228-229................................1

Act of March 2, 1889, ch. 412, 25 Stat. 992-993 .......................................1

Act of March 3, 1863, 12 Stat. 819............................................................1

28 U.S.C. § 1491 (Tucker Act)...........................................................25, 27

## Other Authorities

A. Kozinski, *Should Reading Legislative History Be an Impeachable Offense?,* 31 Suffolk U. L. Rev. 807 (1998) ...........................................14

*Cohen's Handbook of Federal Indian Law* (2005 ed.)..............................30

Norman J. Singer & J.D. Shambie Singer, Sutherland Statutory
Construction § 48:20 (7th Ed. 2007)......................................................10

iv

## ARGUMENT

The Wolfchild Cross-Appellants are compelled to file this brief in reply to the briefs of the United States and its *amici curiae* Shakopee Mdewakanton Sioux Community, Prairie Island Indian Community and Lower Sioux Indian Community. The 1886 Mdewakanton Group requests that this Court reverse the CFC and be instructed to (1) enter the judgment of $673,944 for the 1886 Mdewakanton Group; (2) enter summary judgment on the 1886 Mdewakanton Group claims based on violations of the Indian Nonintercourse Act (INIA),[1] the 1863 Acts,[2] the 1888-1890 Appropriation Acts,[3] and the Indian Reorganization Act (IRA)[4]; and (3) remand for a determination of damages, distribution, and attorney fees and costs.

---

[1] 25 U.S.C. § 177 (Indian Nonintercourse Act).

[2] Act of February 16, 1863, 12 Stat. 652, 654; Act of March 3, 1863, 12 Stat. 819.

[3] Act of June 29, 1888, ch. 503, 25 Stat. 217, 228-229; Act of March 2, 1889, ch. 412, 25 Stat. 992-993; Act of August 19, 1890, ch. 807, 26 Stat. 349.

[4] Act of June 18, 1934, ch. 576, 48 Stat. 984 (Indian Reorganization Act) (codified as amended at 25 U.S.C. § 461-479).

I.    **The 1886 Mdewakaton Group is a Tribe which neither the Government nor the *Amici Curiae* can contradict under *Carcieri* and established legal history.**

Try as they might, the government and *amici curiae* are unsuccessful at straddling the fence of (1) not violating the Supreme Court precedent of *Carcieri* and (2) not contradicting the legal history of the 1886 Mdewakanton Group and the three communities.

In *Carcieri v. Salazar*, 555 U.S. 379 (2009), the Supreme Court held that the Secretary's authority is limited under the IRA to take land into trust for Indians to tribes under federal jurisdiction when the IRA was enacted: June 18, 1934. *Carcieri* bars the Department of the Interior from setting aside trust lands under the IRA for "tribes" that were federally recognized *after* June 18, 1934, the enactment of the IRA.

In 2012, in an unsuccessful straddling of the fence, the government agreed that *Carcieri* applied to Shakopee Mdewakanton Sioux Community (SMSC) and that SMSC's IRA existence depends on the 1886 Mdewakanton Group being under federal jurisdiction in 1934:

> We find that the present day [SMSC] Tribe was previously federally recognized as part of the Lower Sioux Indian Community, which was officially organized under the IRA in 1936. Prior to 1934, the Tribe was officially known as the Mdewakanton Band of Sioux in Minnesota who entered into several treaties with the federal government. Departmental

2

correspondence contemporaneous with the IRA shows irrefutably that the Shakopee Mdewakanton Band was under federal jurisdiction when the Act was passed.[5]

But, disregarding the government's own admission that only the 1886 Mdewakanton Group was under federal jurisdiction in 1934, the government insists that the three communities, not the 1886 Mdewakanton Group, have the vested INIA/IRA rights.

---

[5] Pursuant to Federal Circuit Rule 27, the 1886 Mdewakanton Group have respectfully made a separate motion for the Court to take judicial notice of the Interior "Notice of Decision" dated August 20, 2012 under Fed. R. Evid. 201(b) and (f). The document was first received by counsel on January 29, 2013. Kaardal Decl. This document is not in the record. "Judicial notice may be taken at any time, including on appeal … because [the fact to be noticed] is either '(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *United States. v. Burch*, 169 F.3d 666, 671 (10th Cir. 1999) (citation omitted). *See also TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd.*, 488 F.3d 1282, 1298 (10th Cir. 2007) ("'[F]ederal courts … may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue…'") (quoting *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979)). The Notice of Decision referenced above has direct relation to matters at issue because it discusses the Interior's position in 2012 recognizing the 1886 Mdewakanton Group as an INIA/IRA Tribe in 1934, a central issue to this case, which the U.S. has steadfastly failed and refused to admit since the inception of the instant case nine years ago.

Inconsistently, the government and *amici curiae* continue to promote infirm propositions that the temporary subgroup communities constitute three "sovereign tribes" under the INIA/IRA:

> Plaintiffs cannot displace the [three] Mdewakanton Tribes from their reservations, nor usurp the Tribes' exclusive control of their reservations and the economic benefits that flow therefrom.

Amici Br. at 15; *see, e.g.,* U.S. Br. at 20-21; Amici Br. at 15-20. The *amici curiae*'s characterization of the assertion "that the three Mdewakanton Tribes are 'temporary subgroup communities' [as] absurd" is vastly mistaken. Amici Br. at 20.  To the contrary, the unchallenged interpretation of the Wolfchild Cross-Appellants' cited statutes and administrative record shows that there is one INIA tribe and one IRA tribe with <u>vested</u> rights: the 1886 Mdewakanton Group. Wolfchild Br. at 30-44.

The 1886 Mdewakanton Group has vested statutory rights as a tribe under the INIA, IRA, 1863 Acts, 1888-1890 Acts and all other federal acts that apply to INIA/IRA tribes.  Wolfchild Br. at 35-44.  As the CFC held, the assistance supplied by the 1880-1890 Acts did not constitute "gratuitous appropriations" but instead payments in lieu of treaty stipulations. *Wolfchild VII,* 96 Fed. Cl. at 340 (quoting *Quick*

*Bear v. Leupp,* 210 U.S. 50, 81 (1908)). "No one doubts that the Appropriation Acts provided funds for the Department of the Interior for the benefit of 1886 Mdewakanton group, with specific restrictions on use, ensuring insofar as possible that the funds would provide a long-term resource. Then, for ninety years, the Department treated the funds, and assets purchased with the funds, as a trust corpus, and held any monies in trust accounts." *Wolfchild v. U.S.,* 2013 WL 311303 (Jan. 28, 2013), *citing Wolfchild VII,* 96 Fed. Cl. at 319–21 (money held in Treasury trust accounts), *id.* at 343–47 (assets and money restricted to and for use by the loyal Mdewakanton).

Accordingly, the three communities do not have any vested rights under these statutes. The communities only have powers delegated by the Department which must be exercised consistent with the Department's statutory obligations to the 1886 Mdewakanton Group:[6]

> Neither of these two Indian groups [Lower Sioux Indian Community and Prairie Island Indian Community] constitutes a tribe but each is being organized on the basis of

---

[6] *Id.*; 1 Opinions of the Solicitor of the Department of the Interior Relating to Indian Affairs 1917-1974 ("Solicitor Opinions"), 445, 456-461, 476-477 (Oct. 25, 1934) (citing 25 U.S.C. § 163) (historical tribe powers over enrollment must be consistent with federal law regarding enrollment) (available at thorpe.ou.edu/solicitor.html).

their residence on <u>reserved land</u>...<u>The group may not have such of those powers as rest upon the sovereign capacity of a tribe</u> but may have those powers which are incidental to its ownership of property and to carrying on of business, and those which may be delegated by the Secretary of the Interior.

Solicitor April 15, 1938 opinion titled "Powers of Indian Group Organized Under IRA But Not as Historical Tribe," CA 1161-1162, 1162 (emphasis added).

According to the Solicitor's 1938 letter, the communities are "groups" with delegated powers–not sovereign tribes—and have no vested rights. *Id.* Again, in 1969, the Field Solicitor confirmed that Shakopee reservation lands are a "reservation" for the 1886 Mdewakanton Group.[7] Based on these Department opinions, there is nothing "absurd" about the Plaintiffs' truthful statement that the communities are "temporary subgroup communities" "without sovereign capacity of a tribe." *Id.*

As a simple matter of fact, the communities are not the three vested INIA/IRA tribes they pretend to be. Repetition in the *amici curiae* brief that three INIA/IRA tribes exist does not make it so. *See* Amici Br. at 4, 5, 7, 10, 11, 12, 13. Meanwhile, neither the government

[7] CA2928-2932, 2928.

6

nor the *amici curiae* even attempt to rebut the Solicitor's 1938 opinion that the communities are not three INIA/IRA tribes, but unvested "groups" with powers delegated to them by Interior.

## II.    The 1980 Act and Its Legislative History Do Not Change the Fact That One INIA/IRA Tribe, the 1886 Mdewakanton Group, Exists  Not Three INIA/IRA Tribes.

The government's and *amici curiae*'s call for application of *Chevron*[8], *Skidmore*[9] and other deference to the Department's post-1980 Act actions is inappropriate. *See, e.g.,* Amici Br. at 20-28.[10]  The Court owes no deference to the Department's actions in interpreting the 1980 Act[11] – even when the Department "proposed, drafted and supported" the 1980 Act legislation – because the Department engaged in a pattern of communications to the Congressional Committees which

---

[8] *Chevron U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984).

[9] *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).

[10] Additionally, the *amici curiae* erroneously argue that this case is non-justiciable based on *Samish Indian Nation v. United States,* 419 F.3d 1355, 1373 (Fed. Cir. 2005) and related cases regarding the complete authority of a tribe to determine questions of membership. Amici Br. at 18-20.  However, *Samish* applies to vested INIA/IRA tribes, not to non-tribal Groups with delegated powers such as the three communities which are subject to statutory restrictions. *See id.*

[11] 94 Stat. 362.

7

misrepresented the pre-enactment statutes (INIA, 1863 Acts, 1888-1890 Acts, and IRA) and their implementation ("pre-enactment statutes/implementation") and because the interpretation of the 1980 Act, as a termination act, is inextricably intertwined with the interpretation of the pre-enactment statutes/implementation which create the vested rights allegedly terminated.

The Department's administrative record and actions prior to 1980 contradict the so-called "clear interpretation of that statute [the 1980 Act]" upon which this Court previously relied:

> The view of the agency as to the proper construction of the statute [1980 Act] is particularly pertinent in a case such as this one, in which the agency drafted the legislation in question, was deeply involved in its enactment, and attached the pertinent construction to the statute roughly contemporaneously with its passage...The proper construction of the 1980 Act is thus confirmed by the clear interpretation of that statute within the agency that proposed, drafted and supported the legislation.

*Wolfchild v. United States*, 559 F.3d 1228, 1259 (Fed. Cir. 2009) (*Wolfchild VI*) (citations and footnote omitted). While the 1980 Act achieved transferring land assignment authority to the subgroup communities, the Act did not terminate the 1886 Mdewakanton vested rights as a tribe under federal jurisdiction under the INIA, IRA, the

8

1863 Acts, or the 1888-1890 Acts. There is not one word within the 1980
Act terminating or divesting the 1886 Mdewakanton Group.

The Court's deference to the federal agency's misrepresentations
on the 1980 Act appears to violate the federal court's canons of
statutory construction regarding termination of INIA/IRA tribes and
their reservations.  Federal courts follow "the general rule that
'[d]oubtful expressions are to be resolved in favor of the weak and
defenseless people who are the wards of the nation, dependent on its
protection and good faith.'" *McClanahan v. Arizona State Tax Comm'n,*
411 U.S. 164, 174 (1973) (*quoting Carpenter v. Shaw,* 280 U.S. 363, 367
(1930)). Statutes concerning the rights of Indians are to be liberally
construed in their favor. *United States v. 2,005.32 Acres of Land, More
or Less, Situate in Corson County, S.D.,* 160 F. Supp. 193, 201 (D.S.D.
1958).  The Supreme Court has stated that federal courts will not
lightly conclude that a reservation has been terminated and will require
a clear indication of the fact. *DeCoteau v. District County Court for
Tenth Judicial Dist.,* 420 U.S. 425, 444 (1975); *see also South Dakota v.
Yankton Sioux Tribe,* 522 U.S. 329, 343 (1998); *Solem v. Bartlett,* 465
U.S. 463, 470 (1984).  In *Passamaquoddy,* the U.S. Court of Appeals

9

stated a requirement that "[A]ny withdrawal of trust obligations by Congress [with Indians] would have to have been 'plain and unambiguous' to be effective." *Joint Tribal Council of the Passamaquoddy Tribe,* 528 F.2d 370, 380 (1st Cir. 1975).  The fact that the Department "proposed, drafted and supported the [1980 Act] legislation" based on misrepresentations of pre-enactment statutes/implementation is itself proof that the "plain and unambiguous standard" has not been met.

To be sure, the 1980 legislative history is "mere commentary" regarding the pre-1980 statutes/implementation.  "It is generally held that later observations by those involved in the legislation's creation are not considered when referring to legislative history." 2A Norman J. Singer & J.D. Shambie Singer, Sutherland Statutory Construction § 48:3 (7th Ed. 2007).  Statements made even by a Congressional Committee after a statute was enacted are not part of the statutory history, but are mere commentary and do not create a congressional intent that otherwise did not exist. *Rogers v. Frito-Lay, Inc.,* 611 F.2d 1074, 1082 (5th Cir. 1980).

10

However, in turn, when the interpretation of the enacted statute is inextricably intertwined with the interpretation of the misrepresented pre-enactment statutes/implementation, as is the case here with the 1980 Act, the Court should treat the 1980 Act's legislative history with respect to the enacted 1980 Act as "mere commentary" as it would treat the same legislative history with respect to the pre-enactment statutes/implementation as "mere commentary." Simply put, the interpretative issues are intertwined with the misrepresentations, so the Court should give no deference to the statutory interpretations of the agency which perpetrated the misrepresentations.

Interestingly, neither the Department nor the *amici curie* directly refutes the Wolfchild Cross-Appellants' arguments of the Department's pre-1980 Act misrepresentations in the 1980 Act legislative history. Wolfchild Br. at 3-8. This includes misrepresentations of the Department's implementation of the 1863 Acts, 1888-1890 Act, the IRA and the legal status of the vested 1886 Mdewakanton Group under the INIA/IRA and the unvested temporary subgroup communities. *Id.*

11

For example, the government and *amici curiae* briefs do not rebut that the 1863 Acts authorizing a reservation for the Loyal Mdewakanton were implemented by Interior prior to 1935 by setting apart the 1886 Lands for the 1886 Mdewakanton Group – and later by adding the IRA lands to it with the same statutory use restrictions in favor of the 1886 Mdewakanton Group based on 25 U.S.C. § 467.[12] Contrary to the government's factual misrepresentations in the 1980 Act legislative history, the record is devoid of any indication that three new reservations for three new INIA/IRA tribes were ever established (vested) in 1936 or at anytime thereafter.[13]

Instead, Interior recognized by 1935 in a series of memoranda that the 1886 lands – approximately 1,000 acres –  had been set apart as a "reservation" for the 1886 Mdewakanton Group.[14]   Again, in 1969, the Field Solicitor confirmed that the 1886 lands are a "reservation" for the 1886 Mdewakanton Group.[15]  The only Indian entity entitled to organize under the IRA on June 18, 1934 was the 1886 Mdewakanton

---

[12] CA2832-2837, 2840-2841, 2843-2845, 2855-2856.
[13] *Id.*
[14] *Id.*
[15] CA2928-2932, 2928.

Group – not the three communities which did not exist until 1936 and 1969.[16]

That is why the 1980 Act legislative history is the government's misrepresented statement of facts, brief after brief, regarding the pre-1980 statutes/implementation. Thus, under these unique circumstances where the Department and Congressional Committees have misrepresented facts about the pre-enactment statutes/implementation to Congress and because the interpretation of the 1980 Act as a termination act is inextricably intertwined with interpretation of the pre-enactment statutes/implementation creating the vested rights allegedly terminated, the Court should clarify that it owes no deference to the statutory interpretations of the Department and of the Congressional Committees found in the 1980 Act legislative history, first, in this Court interpreting the pre-enactment statutes/implementation and, second, in this Court interpreting the 1980 Act.

The two Houses <u>and</u> the President agreed on the text of the 1980 Act, not on the committee reports or agency statements. The 39th

---

[16] CA2832-2837, 2840-2841, 2843-2845, 2855-2856.

President of the United States, James Earl Carter, signed the 1980 Act. But, President Carter signed only the text of the 1980 Act. President Carter did not sign onto the Departments' and Congressional Committees' misrepresentations that the 1886 Mdewakanton Group was not a vested INIA/IRA tribe at the time.[17] So, the Court should agree with the 1886 Mdewakanton Group, "[t]o give substantive effect to [the] flotsam and jetsam of [this] legislative process [would be] to short-circuit the constitutional scheme for making law."[18] For all intents and purposes, the 1980 Act did not affect the 1886 Mdewakanton Group status as the sole vested INIA/IRA tribe.

Likewise, the Department's misrepresentations have had collateral effects. In *Smith v. Babbitt,* 100 F.3d 556 (8th Cir. 1996), the U.S. Court of Appeals erroneously treated the Shakopee Mdewakanton Sioux Community (SMSC) as if SMSC were one of three vested INIA/IRA tribes – as if the 1886 Mdewakanton Group were not the sole vested INIA/IRA tribe. Because of this faulty premise, the Eighth Circuit's decision never addressed the <u>vested</u> rights of the 1886

---

[17] U.S. Const., art. I, § 7, cl. 2 and 3.

[18] A. Kozinski, *Should Reading Legislative History Be an Impeachable Offense?*, 31 Suffolk U. L. Rev. 807, 813-14 (1998).

Mdewakanton Group vis-à-vis the three communities. Hence, *Smith* mistakenly relied on a faulty premise that SMSC is an INIA/IRA tribe. SMSC is not a vested INIA/IRA tribe. Instead, SMSC is a subgroup with powers delegated by Interior to fulfill Interior's statutory obligations to the 1886 Mdewakanton Group which is an INIA/IRA tribe.

In this cross-appeal, even after the litigation in *Smith v. Babbitt,* this Court is basically being asked to address the following factual question of first impression: three INIA/IRA tribes or one INIA/IRA tribe?

## III. The Government's "Facts" Are Full of Admissions and Omissions.

The government does not challenge the detailed legal history of the vested 1886 Mdewakanton Group. U.S. Resp. Br. Suppl. Stmt of Facts at 13-17. Similarly, the *amici curiae* brief omits any 1886 Mdewakanton Group legal history prior to 1936. The U.S. answering brief is full of admissions and omissions. (*See* U.S. Br. at 13-17 (Suppl. Stmt of Facts)). For example, the government failed to challenge the Wolfchild account of the following matters:

- The 1886 Census and 1888-1890 Acts were enacted to compensate the 1886 Mdewakanton Group which was deemed as exclusive beneficiary of the land entitlements. Wolfchild Br. at 27-30.

- The Department of Interior under the 1888-1890 Acts purchased land, taking title in the name of the United States, and assigned the land exclusively to the 1886 Mdewakanton Group from 1890 through 1980. *Id.* at 30-34.

- The Department made the "reservation" status official for the 1886 Mdewakanton Group in 1935 with a series of memoranda issued after passage of the IRA. Each memorandum found that the 1886 lands was a "reservation" for the 1886 Mdewakanton Group. *Id.* at 35-42.

- The Department acquired IRA lands under the IRA, adding them to the existing reservation with the same statutory use restrictions as the 1886 Lands, i.e. for the benefit of the 1886 Mdewakanton Group. *Id.* at 42-44.

- The Department, under the IRA, approved Constitutions for the subgroup communities recognizing that the communities were not tribes and only had powers delegated to them by the Department – and even the powers of these temporary subgroup communities had to be exercised consistent with statutory obligations to the 1886 Mdewakanton Group. *Id.* at 37-39.

- After the 1980 Act, the Department erroneously considered the communities as exclusive beneficiaries of the reservations – not the 1886 Mdewakanton Group. *Id.* at 9-18.

- In 2002, the Department completed the sale of the 500,000 acre Minnesota Dakota reservation under the 1863 Acts without complying with the same 1863 Acts' requirement to set aside 7,680 acres for a reservation. *Id.* at 8-9.

16

Regardless of these facts, the government nevertheless concludes that the reservations are held exclusively for the subgroup communities, not the 1886 Mdewakanton Group. U.S. Br. at 20-21. The government has admitted recently that the 1886 Mdewakanton Group was a federally recognized tribe in 1934. Yet, the government contends – despite the INIA, the 1863 Acts, 1888-1890 Acts, and the IRA all favoring the 1886 Mdewakanton Group as an INIA/IRA tribe – that each of the temporary subgroup communities are vested INIA/IRA tribes.

Specifically, the government argues, "In *Wolfchild VI,* this court held that the 1886 lands were never held as a reservation for the 1886 Mdewakantons and the 1980 Act abrogated any preexisting trust." U.S. Brief at 21.  However, as the government knows, the *Wolfchild VI* opinion did not reach the Wolfchild Cross-Appellants' post-remand claims based on the 1886 Mdewakanton Group's pre-existing rights under the INIA, 1863 Acts, and IRA to both the 1886 Lands and the IRA lands:

17

> "In light of our disposition of the two certified questions, we reverse and remand for further proceedings in the trial court."[19]

Nor did this Court address whether there are three or one INIA/IRA tribes. Thus, the *Wolfchild VI* opinion did not resolve, but remanded for adjudication the Wolfchild Cross-Appellants' remaining claims for damages based on the government's violations of the INIA, 1863 Acts, 1888-1890 Appropriation Acts and the IRA.

Once these statutes and historical facts (bulleted above) are considered post-remand, the conclusion is unavoidable that the 1886 lands and IRA lands are reservation lands held under the INIA, the 1863 Acts, the 1888-1890 Appropriation Acts, and the IRA for the 1886 Mdewakanton Group which is the only INIA/IRA tribe.

Even the government should concede – if it were to be blunt and honest – that the government has been working with the 1886 Mdewakanton Group, inclusive of the temporary subgroup communities, as the INIA/IRA tribe for over 125 years. Instead, despite the historical record, the government's brief chooses a different path.

---

[19] *Wolfchild v. United States*, 559 F.3d 1228, 1260 (Fed. Cir. 2009) (*Wolfchild VI*)

The government chose to end its supplemental statement of facts in 1895 and omit critical undisputed pre-1895 facts to avoid self-contradiction. Such a cut-and-paste, mostly cut, approach to legal history is unpersuasive and seems disingenuous to the 1886 Mdewakanton Group.

## IV. The 1886 Mdewakanton Group is Entitled to Summary Judgment on Its Statutory Fund Claims for Pre-1980 and Post-1980 Community Revenues on All Reservation Lands.

The briefs of the government and *amici curiae* fail to provide any reason preventing this Court from directing the CFC to enter summary judgment on the 1886 Mdewakanton Group's statutory fund claims for pre-1980 and post-1980 community revenues on all reservation lands.

Interior is statutorily obligated under the INIA, 1863 Acts, the 1888-1890 Appropriation Acts, and the IRA to ensure that reservation revenues from the 1886 Lands and IRA Lands go to the one INIA/IRA tribe – the 1886 Mdewakanton Group—as it was doing up until 1981. Interior's misapplication of the 1980 Act caused catastrophic damages to the 1886 Mdewakanton Group.

The government is mistaken that the 1886 Mdewakanton Group's "statutory funds claim is not viable." U.S. Brief at 48-50. Likewise, the

19

CFC also erred when it determined the 1886 Mdewakanton Group was only entitled to pre-1980 Act revenue, not post-1980 Act revenue. To the contrary, the 1886 Mdewakanton Group has shown that their claims are viable under the INIA, 1863 Acts, 1888-1890 Appropriation Acts and IRA–and Interior's implementation of those Acts.

First, the government inaccurately characterizes the statutory funds claim as limited to 1886 Land revenues, when the claims also extend to revenues from the IRA lands added to the three reservations under the IRA. The 1980 Act did not apply to the IRA lands which per the IRA, section 7, had the same statutory use restrictions as the 1886 Lands.[20] Thus, the government's narrow argument which focuses only on the 1886 Lands is incomplete and, therefore, inapplicable to the Wolfchild's underlying claims presented to this Court. U.S. Brief at 48-50. Ignoring part of the historical record and applying legal arguments accordingly, the government's conclusory determinations, across the board, fall short of directly challenging the Wolfchild's reasoned analysis of law and fact. The government's arguments regarding 1886 Lands do not even apply to revenues from the other reservation lands

---

[20] Act of June 18, 1934, ch. 576, 48 Stat. 984, § 7 (Indian Reorganization Act), 25 U.S.C. § 467.

still vested for the benefit of the 1886 Mdewakanton Group regardless of how the 1980 Act is interpreted.

Second, the government erroneously argues that the 1980 Act – which does not address tribal funds – cuts off any 1886 Lands revenue claim based on "Plaintiffs' alleged pre-existing rights under the 1863 Acts and INIA." U.S. Brief at 49. The problem for the government's argument is that the 1886 Mdewakanton Group – as the only INIA/IRA tribe – has pre-existing rights under the 1863 Acts and the INIA. The communities are not three INIA/IRA tribes, but mere temporary subgroup communities which the government must make conform to and recognize the 1886 Mdewakanton Group's pre-existing rights. The government appears to suggest that the 1886 Lands could be simultaneously held for the 1886 Mdewakanton Group and for the three communities:

> But even if the government has a continuing obligation under the 1863 Acts to convey or assign former reservation lands to the loyal Sioux (see *infra*), this unfulfilled obligation has nothing to do with the status of the 1886 lands, which were purchased and assigned under the 1888-1890 Acts, or to the Plaintiffs' alleged entitlement to the revenues from the 1886 Lands.

*Id.* The opposite is the case. The 1886 Mdewakanton Group has pre-existing rights to reservation revenues – i.e., the 1886 Lands and IRA Lands were set apart under the 1863 Acts as detailed in the Wolfchild Statement of Facts (Wolfchild Br. at 35-42). Thus, the one 1886 Mdewakanton Group, not the three communities, is entitled to all the revenue from the reservations.

Because the 1886 Mdewakanton have these pre-existing rights, the government is, in turn, liable for a catastrophic error – allowing so few (the temporary subgroup community members) to benefit so much (annual income millionaires) at the expense of so many (over 20,000 generally poor Native American claimants).

Finally, the government directly contradicts the record that the 1886 Lands are not tribal lands under the INIA. Interior, by 1935, recognized in a series of memoranda that the 1886 lands had been set apart by the Department under the 1863 Acts and 1888-1890 Acts as a reservation for the 1886 Mdewakanton Group. *See* Wolfchild Br. at 37-38. The 1886 lands are, therefore, tribal lands. Further, the Department purchased the IRA lands and added it to the pre-existing reservations for the 1886 Mdewakanton Group. Under IRA, section 7, codified at 25

22

U.S.C. § 467, the same statutory restrictions on the 1886 Lands would apply to the IRA Lands. *See* Wolfchild Br. at 42-44. Thus, the IRA lands are tribal lands just as the 1886 Lands are. The INIA covers these tribal reservation lands and creates a fiduciary relationship between the federal government and the 1886 Mdewakanton Group. *See id.* at 48.

The Department's erroneous determination after the 1980 Act to treat the three temporary subgroup communities as three INIA/IRA tribes when the 1886 Mdewakanton Group is the exclusive INIA/IRA tribe has caused significant damages to the Wolfchild Cross-Appellants. The August 22, 2011 CFC judgment of $673,944 based on the pre-1980 Act revenues represents only a fraction of the post-1980 Act damages. CA at A92.

## V.    The 1886 Mdewakanton Group is Entitled to Summary Judgment on Its Statutory Land Claims.

The briefs of the government and *amici* fail to provide any meaningful obstacle to this Court from directing the CFC to enter summary judgment on the 1886 Mdewakanton Group's statutory land claims.

23

In the Wolfchild Cross-Appellants' Brief, the 1886 Mdewakanton Group proved that it met the four requirements for a meritorious INIA land claim. Wolfchild Br. at 47-58. First, the 1886 Mdewakanton Group is an Indian "tribe" within the meaning of the INIA. *Id.* at 48-55. Second, the 7,680 acres of the former 1858 Treaty reservation land and the current reservations, consisting of 1886 Lands and the IRA Lands, are covered by the INIA as tribal land. *Id.* at 55-56. Third, Congress has never consented to the alienation of the 7,680 acres, the 1886 Lands nor the IRA Lands. *Id.* at 56-57. Fourth, the trust relationship between the government and the 1886 Mdewakanton Group, which is established by coverage of the INIA, has never been terminated. *Id.* at 57-58.[21]

Thus, the government is mistaken when it proclaims that the 1886 Mdewakanton Group's "statutory land claim is not viable" and that the 1886 Mdewakanton Group is entitled to no land under the INIA, 1863 Acts, 1888-1890 Appropriation Acts and the IRA. U.S. Brief at 42-48.

The government provides three unsubstantiated grounds for the 1886 Mdewakanton Group having no right to the three reservations and

---

[21] *Narragansett Tribe of Indians v. Southern Rhode Island Land Dev. Corp.*, 418 F. Supp. 798, 803 (D.R.I. 1976).

7,680 acres. First, at pages 42 through 44, the government argues that the INIA does not provide a basis for a Tucker Act claim. Here, the government proposes that the INIA does not create an affirmative obligation on federal officials; so, the INIA is not a substantive source of law to support a Tucker Act claim. But, federal officials do have an affirmative obligation under the INIA to *reserve* – not to convey – reservations to third parties without Congressional authorization. In this case, the Department, after the 1980 Act, transferred the property rights of the 1886 Mdewakanton to the three purported INIA/IRA tribes without Congressional authorization – a direct violation of the INIA.

Thus, the Wolfchild Cross-Appellants have two land-based claims against federal officials acting to transfer their land interests to third parties without Congressional authorization. First, after the 1980 Act, federal officials erroneously deemed the three reservations to be exclusively for the three purported INIA/IRA tribes – transferring the 1886 Mdewakanton Group's three reservations away without Congressional authorization. Second, in 2002, federal officials conveyed the last remaining parcel of the 500,000 acre reservation under the

25

1863 Acts without having set apart the statutorily required 7,680 additional acres of reservation land.

The INIA does create an affirmative obligation on federal officials to avoid illegal transfer of tribal lands. The government on page 42 of its brief recognizes the applicability of the INIA: "[t]his is not to say an otherwise invalid tribal land conveyance [under the INIA] – i.e., a conveyance without Congressional approval – becomes valid if approved by federal officials." True. But, the government's statement begs the question. If federal officials' tribal land transfers are invalid without Congressional approval, then there is a corresponding affirmative obligation on federal officials not to invalidly transfer tribal lands to third parties. The government is illogical to maintain at the same time that (1) federal official approval of an illegal transfer of tribal lands is invalid under the INIA, and (2) that federal officials have no affirmative obligation to avoid illegal transfer of tribal lands under the INIA. The government's position violates common sense because it is legally inconsistent. Of course, the INIA creates an affirmative obligation on federal officials not to transfer tribal lands without Congressional authorization.

In turn, since federal officials have an affirmative obligation under the INIA to not invalidly convey tribal lands to third parties, then the INIA, under the Tucker Act, 28 U.S.C. § 1491 is a "substantive source of law" that places "specific fiduciary or other duties" on federal officials. *See United States v. Navajo Nation,* 556 U.S. 287, 290 (2009). Thus, the jurisdictional requirement of the Tucker Act is met because federal officials are affirmatively obligated to comply with the INIA by not invalidly transferring tribal lands to third parties.

Second, the government at pages 44-46 argues that the Wolfchild Cross-Appellants "do not allege an INIA violation" because: (1) a conveyance under the INIA must be from the 1886 Mdewakanton Group, not a "failure to reserve land"; (2) the 1863 Act land entitlements were for individuals, not a Group; and (3) the 1886 Mdewakanton Group is not an INIA tribe.

As a preliminary matter, the government fails to mention that, in construing the INIA and the 1863 Acts, canons of statutory construction apply in favor of the 1886 Mdewakanton Group as discussed *supra.*

The government participates in fallacy when it argues the INIA claim fails because it is based on a "failure to reserve land" and not a

transfer of land. Both of the Wolfchild Cross-Appellants' claims identify

that the 1886 Mdewakanton Group had pre-existing land rights

improperly transferred by the Department without Congressional

authorization.

The INIA precedes and applies to the 1863 Acts and the 1888-

1890 Appropriation Acts. Prior to the 1863 Acts, it is undisputed that a

500,000 acre Mdewakanton Dakota reservation existed under the 1858

Treaty. The Department's 1863-2002 sale of that reservation under the

1863 Acts was based on a requirement that 7,680 acres be set aside for

a reservation for the statutorily-identified friendly Sioux – later

statutorily codified as the 1886 Mdewakanton Group by the May 20,

1886 census and the 1888-1890 Appropriation Acts. The government

violated the INIA by completing the sale and transfer of the whole

500,000 acre reservation in 2002 without meeting that requirement of

providing the 7,680-acre reservation to the 1886 Mdewakanton Group –

or by obtaining prior Congressional statutory authority to ignore the

statutory requirement.

Similarly, the Department's purchase and setting aside of the

1886 Lands and IRA lands for the vested 1886 Mdewakanton Group

28

were completed prior to the 1980 Act. After the 1980 Act, the Department without Congressional authorization erroneously transferred all property rights in the 1886 Lands and IRA lands to the purported three INIA/IRA tribes – irrevocably damaging the 1886 Mdewakanton Group for thirty=three years and counting.

The government participates in fallacy to argue that the 1863 Act reservation land entitlements were for individuals, not a Group. First, the statutory text of the 1863 Acts expressly refer to friendly Sioux individuals of "before-named bands" and "said bands" – i.e. members of said bands – receiving 80 acres of Minnesota reservation land. This statutory entitlement was consistent with the 1858 Act, abrogated by the same 1863 Acts, which provided 80 acres of reservation land to each of the then-Band-members. Congress intended that this remnant Group would retain a small Minnesota reservation – which actually happened in part with the 1886 Lands and IRA Lands - but not to the full 7,680 acres. Administratively, the Department always recognized the 1863 Act beneficiaries as a Group. For example, the Department in 1865 set aside 7,680 acres of contiguous land for the 1863 Act beneficiary Group. If it was not a Group, the 7,680 acres of land would

not have been contiguous. Finally, Department correspondence from 1863 through 2012 refers to the 1863 Acts and 1888-1890 Acts beneficiaries as a Group, not individuals – namely the "Mdewakanton Band of Sioux in Minnesota."

The government further participates in fallacy to argue that the 1886 Mdewakanton Group is not a tribe under the INIA/IRA. It has been long accepted that "reservation tribes with continuing federal contact are considered tribes under virtually every statute relating to Indian tribes..." *Cohen's Handbook of Federal Indian Law* (2005 ed.) (definition of Tribes; Application of Federal Statutes) at 144-145. The 1886 Mdewakanton Group is a vested reservation tribe – an INIA/IRA tribe – because Congress and the Department through statutes and statutory implementation:

- identified and set aside reservations for the 1886 Mdewakanton Group and approved IRA temporary subgroup communities for the 1886 Mdewakanton Group (Wolfchild Br. at 30-42);

- added the IRA and other lands to the reservations (*Id.* at 42-44); and

- because the Department maintained tribal trust accounts of the communities' revenues for the 1886 Mdewakanton Group until 1981 ( *Id.* at 44-46).

30

The government participates in a fallacy when it argues the 1886

Mdewakanton Group is not a tribal beneficiary of the 1863 Acts land

entitlements because the 1886 Mdewakanton Group came after the

1863 Acts. But, under the INIA, federal courts permit a tribal successor-

in-interest to make INIA land claims. *See Oneida Indian Nation of New*

*York v. New York*, 194 F. Supp. 2d 104, 117-20 (N.D.N.Y. 2002)

(determining genealogical descendants were eligible to participate in

historical 1795-1846 INIA tribal claims). Further, the *Narragansett*

case is an example where an Indian Group prevailed as a "tribe" under

the INIA despite not being recognized by Interior under the IRA –

which is not the case here because the 1886 Mdewakanton Group has

three IRA-identified temporary subgroup communities.[22]   Accordingly,

the tribal lands involved here include the 1858 Treaty reservation land

and the purchased reservation lands (1886 Lands and IRA lands). The

INIA claim is that the Department violated many statutes by

transferring the reservation lands to the three purported INIA/IRA

tribes and other third parties without Congressional authorization –

depriving the vested 1886 Mdewakanton Group of three reservations

---

[22] *Id.*

31

and the 7,680 acres. The 1886 Mdewakanton Group is the tribal
successor-in-interest to all these lands. In fact, by enacting the 1888-
1890 Appropriation Acts, Congress codified the status of the 1886
Mdewakanton Group as tribal successor-in-interest. The 1886
Mdewakanton Group was specifically designated, individual by
individual, on the Department's May 20, 1886 Census, to be the tribal
successor-in-interest.  The Department by 1935 confirmed the 1886
Mdewakanton Group as the one vested INIA/IRA tribe and, later, added
IRA lands to the 1886 Mdewakanton Group's reservation and added
three unvested temporary subgroup communities with delegated
powers.

The government on page 47 again tries to avoid liability via the
statute of limitations. The government correctly recognizes that the
"[p]laintiffs reason that DOI's (alleged) obligation, per the 1863 Acts, to
set aside former reservation lands for the loyal Sioux (and their
descendants) continued until all former reservations lands were sold
and none of these lands remained available to be set apart under the
Acts." U.S. Brief at 47. Nonetheless, the government's rationale that the
INIA claim is time-barred is inaccurate.

All three arguments are based on the government's sale of the last remaining 4.8-acre parcel of the former reservation in 2002 being insufficient to trigger a cause of action and a six-year statute of limitations period. First, the government inaccurately states that the sale of the 4.8-acre parcel had nothing to do with the originally set-aside 7,680 acres. Actually, the sale and original set-aside acreage are interrelated because the sale of the Mdewakanton's 500,000 acre reservation completed in 2002 was based on a requirement under the 1863 Acts that a 7,680-acre reservation be set aside. Congress wanted a small part of the reservation to remain *for the loyal Mdewakanton.* 7,680 acres is about 1.5 percent of the 500,000 acre reservation. So, the sale in 2002 gives rise to the Wolfchild Cross-Appellants' cause of action within the six-year statute of limitations period. After all, the Department could have set aside the 4.8-acre parcel as a reservation for the 1886 Mdewakanton Group in 2002 as it did for the 1886 Lands and the IRA Lands before it. But, the government did not do so, giving rise to the 2002 cause of action.

Second, the government mistakenly argues that it did not have the authority under the March 1863 Act in 2002 to set aside the 4.8-

33

acre parcel for the 1886 Mdewakanton Group because the 4.8-acre parcel was not where "improvements are situated" as detailed by the March 1863 Act. But, by 2002, the government had already delayed about 140 years, so the statutory reference to "improvements" was no longer a meaningful limitation on the government or was even obsolete. Either way, the government had the duty under both 1863 Acts to set aside the 4.8-acre parcel for the 1886 Mdewakanton Group – and it failed to do so.

Third, the government is mistaken to suggest and argue that its aborted 1865 plan to assign the twelve sections to the 1886 Mdewakanton Group triggered the six-year statute of limitations in 1895 when the twelve sections had been sold. The historical factual record shows differently:

- In 1869, the Department looked again for former reservation land to assign to the Loyal Mdewakanton – presumably 7,800 acres. Wolfchild Br. at 26.

- After the 1888-1890 Acts, the Department purchased the 1886 Lands, about 1,000 acres, for the benefit of the 1886 Mdewakanton Group. *Id.* at 30-34.

- After the 1934 IRA, the Department purchased the IRA Lands, about 1,600 acres, for the benefit of the 1886 Mdewakanton Group. *Id.* at 42-44.

34

- In 2002, the Department sold the last remaining 4.8-acre parcel of the former reservation to a third party rather than transfer it for the benefit of the 1886 Mdewakanton Group. *Id.* at 8-9.

The government refuses to recognize that it failed to provide the full 7,680-acre reservation prior to the completed sale of the former reservation in 2002. If the approximately 2,600 acres of 1886 Lands and IRA Lands were offset against the 7,680 acres owed (which Wolfchild Cross-Appellants assert is inappropriate), the government would still owe about 5,000 acres to the 1886 Mdewakanton Group. In 2002, the government could have transferred the 4.8 acres into a reservation for the benefit of the 1886 Mdewakanton Group rather than sell it to a third party. The government did not do so, triggering the Wolfchild Cross-Appellants' claim – well within the six-year statute of limitations.

## CONCLUSION

The 1886 Mdewakanton Group seeks damages in the CFC because the government's legal violations have had catastrophic consequences for the 1886 Mdewakanton Group.

Dated:  January 30, 2013.

**MOHRMAN & KAARDAL, P.A.**

Erick G. Kaardal
33 South Sixth Street, Suite 4100
Minneapolis, MN  55402
(612) 341-1074

*Attorneys for Wolfchild Cross-Appellants*

36

# CERTIFICATE OF COMPLIANCE
## (Nos. 2012-5035, -5036, -5043)

I certify that:

1. Pursuant to Fed. R. App. P. 32(a)(7)(C), that the attached reply brief is:

Proportionately spaced, has a typeface of 14 points or more and contains 6829

words (exclusive of the table of contents, table of authorities, and certificates of

counsel).

Date: January 30, 2013.

_Erick Kaardal_
_____
Erick G. Kaardal

# CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing Brief of Plaintiffs-Cross-Appellants have been served by United States mail on January 30, 2013, upon the following counsel of record and interested parties:

John L. Smeltzer
United States Department of Justice
Environment & Natural Resources Div.
601 D. Street NW
Washington, DC 20004
*(via Federal Express)*

Jack E. Pierce
Bernick Lifson, P.A.
The Colonnade
5500 Wayzata Blvd., Ste. 1200
Minneapolis, MN 55416

Michael Ellwanger
Rawlings, Nieland, Probasco,
Killinger, Ellwanger, Jacobs &
Mohrhauser, LLP
522 Fourth Street, Suite 300
Sioux City, IA 51101

Wood R. Foster, Jr.
Siegel, Brill, Greupner, Duffy
& Foster, P.A.
1300 Washington Square
100 Washington Avenue South
Minneapolis, MN 55401

Kelly H. Stricherz
213 Forest Avenue
PO Box 187
Vermillion, SD 57069

Bernard Rooney, Esq.
84 Park Avenue
Larchmont, NY 10538

Creighton A. Thurman
Thurman Law Office
PO Box 897
Yankton, SD 57078

Scott A. Johnson
Johnson Law Group LLP
10580 Wayzata Blvd., Suite 250
Minnetonka, MN 55305

Elizabeth T. Walker
Walker Law, LLC
429 North St. Asaph Street
Alexandria, VA 22314

Jay C. Shultz
Lynn, Jackson, Shultz & Lebrun
PO Box 8250
Rapid City, SD 57709

Robin L. Zephier
Abourezk & Zephier, P.C.
PO Box 9460
Rapid City, SD 57709

Barry P. Hogan
Renaud Cook Drury Mesaros, P.A.
One North Central Avenue, Ste. 900
Phoenix, AZ 85004

Garrett J. Horn
Horn Law Office Prof. LLC
PO Box 886
Yankton, SD 57078

Rory King
Bantz, Gosch & Cremer LLC
305 Sixth Avenue SE
PO Box 970
Aberdeen, SD 57402

Gary J. Montana
Montana & Associates
N 12923 N Prairie Road
Osseo, WI 54758

Larry B. Leventhal
Larry Leventhal & Associates
319 Ramsey Street
Saint Paul, MN 55102

Royce Deryl Edwards, Jr.
606 South Pearl
Joplin, MO 64801

Randy V. Thompson
Nolan, Thompson & Leighton
595 Southgate Office Plaza
5001 American Blvd. W., Ste. 595
Bloomington, MN 55437

Francis E. Felix
826 21st Ave SE
Minneapolis, MN 55414

Brian L. Radke
Radke Law Office, P.C.
3500 S 1st Ave. Circle, Suite 201
Sioux Falls, SD 57105

Erick G. Kaardal, Esq.
Mohrman & Kaardal, P.A.
33 S. Sixth Street, Suite 4100
Minneapolis, MN 55402
612-341-1074