# United States Court of Appeals
## for the Federal Circuit

2012-5035, -5036, -5043

SHELDON PETERS WOLFCHILD, ERNIE PETERS LONGWALKER,
SCOTT ADOLPHSON, MORRIS J. PENDLETON, BARBARA FEEZOR
BUTTES, WINIFRED ST. PIERRE FEEZOR, AUTUMN WEAVER, ARIES
BLUESTONE WEAVER, ELIJAH BLUESTONE WEAVER, RUBY MINKEL,
LAVONNE A. SWENSON, WILLIS SWENSON, AARON SWENSON,
BEVERLY M. SCOTT, LILLIAN WILSON, MONIQUE WILSON, SANDRA
COLUMBUS GESHICK, CHERYL K. LORUSSO, JENNIFER K. LORUSSO,
CASSANDRA SHEVCHUK, JASON SHEVCHUK, JAMES PAUL WILSON,
EVA GRACE WILSON, BENITA M. JOHNSON, and KEVIN LORUSSO,

Plaintiffs-Cross Appellants,

and

ANITA D. WHIPPLE et al, Descendants of Lucy Trudell, BONNIE RAE
LOWE, et al, Descendants of Joseph Graham, et al, LENOR ANN
SCHEFFLER BLAESER et al, Descendants of John Moose, and MARY
BETH LAFFERTY, et al,

Plaintiffs,

(caption continued on following page)

---

Appeals from the United States Court of Federal Claims in
Consolidated Case Nos. 03-CV-2684 and 01-CV-0568, Judge Charles F.
Lettow

---

## WOLFCHILD CROSS APPELLANTS MOTION
## TO TAKE JUDICIAL NOTICE OF DEPARTMENT'S
## 2012 NOTICE OF DECISION

ERICK G. KAARDAL
Mohrman & Kaardal, P.A.
33 South Sixth Street, Suite 4100
Minneapolis, Minnesota 55402
612-341-1074

RECEIVED

and

COURSOLLE DESCENDANTS and ROCQUE AND TAYLOR
DESCENDANTS,

Plaintiffs,

and

DEBORAH L. SAUL, LAURA VASSAR, et al, LYDIA FERRIS et al,
DANIEL M. TRUDELL, et al, and ROBERT LEE TAYLOR, et al, and DAWN
HENRY,

Plaintiffs,

and

RAYMOND CERMAK, SR., (acting individually and under a power of
attorney for Stanley F. Cermak, Sr.), MICHAEL STEPHENS, et al, JESSE
CERMAK, et al, DENISE HENDERSON, DELORES KLINGBERG, SALLY
ELLA ALKIRE, PIERRE ARNOLD, JR.,
GERTRUDE GODOY et al.,

Plaintiffs,

and

JOHN DOES 1-30, WINONA C. THOMAS ENYARD, and KITTO, et al.,

Plaintiffs,

and

FRANCINE GARREAU, et al.,

Plaintiffs,

and

FRANCIS ELAINE FELIX,

Plaintiff,

and

KE ZEPHIER, et al.,

Plaintiffs,

and

LOWER SIOUX INDIAN COMMUNITY,
Plaintiff,

and

PHILIP W. MORGAN,
Plaintiff,

and

REBECCA ELIZABETH FELIX,
Plaintiff,

and

VERA A. ROONEY, et al.,
Plaintiffs,

and
DANNY LEE MOZAK,
Plaintiff-Cross Appellant,

and

DAWN BURLEY, et al.,
Plaintiffs-Cross Appellants,

and

HARLEY ZEPHIER, SR.,
Plaintiff-Cross-Appellant,

and

JOHN DOES 1-433,
Plaintiffs-Cross Appellants,

and

JULIA DUMARCE, et al.,

Plaintiffs-Cross Appellants,

and

RAYMOND COURNOYER, SR., et al., JERRY ROBINETTE, et al., SANDRA KIMBELL, et al., CHARLENE WANNA, et al., and LESLIE LEE FRENCH, et al.,

Plaintiffs-Cross Appellants,

and

KRISTINE ABRAHAMSON,

Plaintiff-Cross Appellant,

and

VICTORIA ROBERTSON VADNAIS,

Plaintiff-Cross Appellant,

v.

UNITED STATES,

Defendant-Appellant.

**Form 9**

**FORM 9.  Certificate of Interest**

---

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Wolfchild, et al. _____ v. United States _____

No. 2012-5043

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)

Erick G. Kaardal _____ certifies the following (use "None" if applicable; use extra sheets if necessary):

1.     The full name of every party or amicus represented by me is:

Listed on the attached letter. In the Court of Federal Claims, I represent all plaintiffs.

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

Same as #1.

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None.

4. ☑ The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Mohrman & Kaardal, P.A., Erick G. Kaardal, William F. Mohrman

_____1-16-12_____
Date

_____
Signature of counsel

Erick Kaardal
Printed name of counsel

Please Note: All questions must be answered
cc: Counsel of Record _____

124



# MOHRMAN & KAARDAL, P.A.

### ATTORNEYS AND COUNSELORS AT LAW

33 SOUTH SIXTH STREET
SUITE 4100
MINNEAPOLIS, MINNESOTA 55402

ERICK G. KAARDAL

TELEPHONE: 612/341-1074
FACSIMILE: 612-341-1076
WRITER'S E-MAIL: KAARDAL @MKLAW.COM

January 9, 2012

VIA FACSIMILE (202-275-9678)

United States Court of Appeals
Federal Circuit
Attn: Christine
Clerk of Court
717 Madison Place NW, Room 401
Washington, D.C. 20439

**Re:**  *Wolfchild et al. v. United States*

Dear Christine:

Pursuant to your verbal request, I confirm that my law firm and I represent the following parties:

SHELDON PETERS WOLFCHILD, ERNIE PETERS LONGWALKER, SCOTT ADOLPHSON, MORRIS J. PENDLETON, BARBARA FEEZOR BUTTES, WINIFRED ST. PIERRE FEEZOR, AUTUMN WEAVER, ARIES BLUESTONE WEAVER, ELIJAH BLUESTONE WEAVER, RUBY MINKEL, LAVONNE A. SWENSON, WILLIS SWENSON, AARON SWENSON, BEVERLY M. SCOTT, LILLIAN WILSON, MONIQUE WILSON, SANDRA COLUMBUS GESHICK, CHERYL K. LORUSSO, JENNIFER K. LORUSSO, CASSANDRA SHEVCHUK, JASON SHEVCHUK, JAMES PAUL WILSON, EVA GRACE WILSON, BENITA M. JOHNSON, and KEVIN LORUSSO.

If you have any questions or concerns, please do not hesitate to contact me.

Sincerely,

Erick G. Kaardal

Pursuant to Rule 27 of the Federal Rules of Appellate Procedure for the Federal Circuit, the Wolfchild Cross-Appellants move for this Court to take judicial notice of the United States Department of the Interior's "Notice of Decision" dated August 20, 2012. *See* Fed. R. Evid. 201(b) and (f). The Notice of Decision is attached as an Exhibit A to the Declaration of Erick G. Kaardal.

Counsel sought consent to this motion from all parties. Kaardal Dec. ¶¶ 4-7. The government did not give consent to the motion. *Id.,* Ex. B. However, the government does not dispute the authenticity of the document. *Id.* One other party gave consent. *Id.* ¶ 6. The other parties have not responded yet. *Id.*

The Wolfchild Plaintiff-Cross Appellants obtained the above-referenced Notice of Decision on January 29, 2013. Counsel was not aware of the document's existence before that date. *Id.* at ¶ 3.

"Judicial notice may be taken at any time, including on appeal ... because [the fact sought to be noticed] is either '(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *United States. v. Burch*, 169 F.3d 666, 671 (10th Cir. 1999) (citation omitted). *See also TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd.*, 488 F.3d 1282, 1298 (10th Cir. 2007) ("'[F]ederal courts ... may take

notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.'") (quoting *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979)).

Under 25 U.S.C. § 2, the Commissioner of Indian Affairs falls under the direct authority of Interior. Further, the Regional Director implements Interior's policy of acquiring land on behalf of the United States for the benefit of Indian tribes under 25 CFR § 151. The Notice of Decision, issued pursuant to the Regional Director's powers is *directly related to matters at issue* in the instant appeal because it discusses the Interior's position in 2012 recognizing the 1886 Mdewakanton Group as a Tribe as of 1934, a central issue to this case, which the U.S. has steadfastly failed and refused to admit since the inception of the instant case nine years ago. Moreover, the document is reliable and readily verifiable with certainty because it is an Interior record. The document's authenticity is not challenged by counsel for the United States. Kaardal Dec. Ex. B.

Because the Interior decision occurred in 2012, after the filing of the cross-appeal of the U.S. Court of Federal Claims, this was not known nor in the possession of the Wolfchild Cross-Appellants prior to the appeal. Thus, the Notice of Decision has not been presented to the courts before.

Counsel for Wolfchild Cross-Appellants are confounded, because of the document's apparent significance regarding one issue before this Court, that the document had not been presented by the United States previously. Regardless, the Notice of Decision may assist this Court making a finding of fact that the 1886 Mdewakanton Group was under federal jurisdiction in 1934, the year of enactment of the Indian Reorganization Act, and the communities were not under federal jurisdiction because they did not exist then.

For all the reasons stated above, the Wolfchild Plaintiff-Cross Appellants respectfully requests this Court to grant our motion and take judicial notice of Interior's "Notice of Decision" dated August 20, 2012.


Dated: January 30, 2013.             **MOHRMAN & KAARDAL, P.A.**

                                     Erick G. Kaardal
                                     33 South Sixth Street, Suite 4100
                                     Minneapolis, Minnesota 55402
                                     (612) 341-1074

                                     *Attorneys for Wolfchild Cross-Appellants*

## CERTIFICATE OF COMPLIANCE
### (Nos. 2012-5035, -5036, -5043)

I certify that:

1. Pursuant to Fed. R. App. P. 32(a)(7)(C), that the attached Motion is:

Proportionately spaced, has a typeface of 14 points or more and contains 602

words.


Date:  January 30, 2013.

_____

Erick G. Kaardal

## CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing Motion of Plaintiffs-Cross-

Appellants and Declaration of Erick G. Kaardal have been served by United States

mail on January 30, 2013, upon the following counsel of record and interested

parties:

John L. Smeltzer
United States Department of Justice
Environment & Natural Resources Div.
601 D. Street NW
Washington, DC 20004
*(via Federal Express)*

Jack E. Pierce
Bernick Lifson, P.A.
The Colonnade
5500 Wayzata Blvd., Ste. 1200
Minneapolis, MN 55416

Michael Ellwanger
Rawlings, Nieland, Probasco,
Killinger, Ellwanger, Jacobs &
Mohrhauser, LLP
522 Fourth Street, Suite 300
Sioux City, IA 51101

Wood R. Foster, Jr.
Siegel, Brill, Greupner, Duffy
& Foster, P.A.
1300 Washington Square
100 Washington Avenue South
Minneapolis, MN 55401

Kelly H. Stricherz
213 Forest Avenue
PO Box 187
Vermillion, SD 57069

Bernard Rooney, Esq.
84 Park Avenue
Larchmont, NY 10538

Creighton A. Thurman
Thurman Law Office
PO Box 897
Yankton, SD 57078

Scott A. Johnson
Johnson Law Group LLP
10580 Wayzata Blvd., Suite 250
Minnetonka, MN 55305

Elizabeth T. Walker
Walker Law, LLC
429 North St. Asaph Street
Alexandria, VA 22314

Jay C. Shultz
Lynn, Jackson, Shultz & Lebrun
PO Box 8250
Rapid City, SD 57709

Barry P. Hogan
Renaud Cook Drury Mesaros, P.A.
One North Central Avenue, Ste. 900
Phoenix, AZ 85004

Rory King
Bantz, Gosch & Cremer LLC
305 Sixth Avenue SE
PO Box 970
Aberdeen, SD 57402

Larry B. Leventhal
Larry Leventhal & Associates
319 Ramsey Street
Saint Paul, MN 55102

Randy V. Thompson
Nolan, Thompson & Leighton
595 Southgate Office Plaza
5001 American Blvd. W., Ste. 595
Bloomington, MN 55437

Brian L. Radke
Radke Law Office, P.C.
3500 S 1st Ave. Circle, Suite 201
Sioux Falls, SD 57105

Robin L. Zephier
Abourezk & Zephier, P.C.
PO Box 9460
Rapid City, SD 57709

Garrett J. Horn
Horn Law Office Prof. LLC
PO Box 886
Yankton, SD 57078

Gary J. Montana
Montana & Associates
N 12923 N Prairie Road
Osseo, WI 54758

Royce Deryl Edwards, Jr.
606 South Pearl
Joplin, MO 64801

Francis E. Felix
826 21st Ave SE
Minneapolis, MN 55414

_S. Kaardal_

Erick G. Kaardal, Esq.
Mohrman & Kaardal, P.A.
33 S. Sixth Street, Suite 4100
Minneapolis, MN 55402
612-341-1074

## United States Court of Appeals
### for the Federal Circuit

2012-5035, -5036, -5043

SHELDON PETERS WOLFCHILD, ERNIE PETERS LONGWALKER,
SCOTT ADOLPHSON, MORRIS J. PENDLETON, BARBARA FEEZOR
BUTTES, WINIFRED ST. PIERRE FEEZOR, AUTUMN WEAVER,
ARIES BLUESTONE WEAVER, ELIJAH BLUESTONE WEAVER,
RUBY MINKEL, LAVONNE A. SWENSON, WILLIS SWENSON,
AARON SWENSON, BEVERLY M. SCOTT, LILLIAN WILSON,
MONIQUE WILSON, SANDRA COLUMBUS GESHICK, CHERYL K.
LORUSSO, JENNIFER K. LORUSSO, CASSANDRA SHEVCHUK,
JASON SHEVCHUK, JAMES PAUL WILSON, EVA GRACE WILSON,
BENITA M. JOHNSON, and KEVIN LORUSSO,

Plaintiffs-Cross Appellants,

and

ANITA D. WHIPPLE et al, Descendants of Lucy Trudell, BONNIE RAE
LOWE, et al, Descendants of Joseph Graham, et al, LENOR ANN
SCHEFFLER BLAESER et al, Descendants of John Moose, and MARY
BETH LAFFERTY, et al,

Plaintiffs,

(caption continued on following page)

Appeals from the United States Court of Federal Claims in
Consolidated Case Nos. 03-CV-2684 and 01-CV-0568, Judge Charles F.
Lettow

## DECLARATION OF ERICK G. KAARDAL

ERICK G. KAARDAL
Mohrman & Kaardal, P.A.
33 South Sixth Street, Suite 4100
Minneapolis, Minnesota 55402
612-341-1074



RECEIVED

United States Court of Appeals
For The Federal Circuit

and

COURSOLLE DESCENDANTS and ROCQUE AND TAYLOR
DESCENDANTS,
Plaintiffs,

and

DEBORAH L. SAUL, LAURA VASSAR, et al, LYDIA FERRIS et al,
DANIEL M. TRUDELL, et al, and ROBERT LEE TAYLOR, et al, and
DAWN HENRY,
Plaintiffs,

and

RAYMOND CERMAK, SR., (acting individually and under a power of
attorney for Stanley F. Cermak, Sr.), MICHAEL STEPHENS, et al,
JESSE CERMAK, et al, DENISE HENDERSON, DELORES
KLINGBERG, SALLY ELLA ALKIRE, PIERRE ARNOLD, JR.,
GERTRUDE GODOY et al.,
Plaintiffs,

and

JOHN DOES 1-30, WINONA C. THOMAS ENYARD, and KITTO, et al.,
Plaintiffs,

and

FRANCINE GARREAU, et al.,
Plaintiffs,

and

FRANCIS ELAINE FELIX,
Plaintiff,

and

2

KE ZEPHIER, et al.,
                    Plaintiffs,

and

LOWER SIOUX INDIAN COMMUNITY,
                    Plaintiff,

and

PHILIP W. MORGAN,
                    Plaintiff,

and

REBECCA ELIZABETH FELIX,
                    Plaintiff,

and

VERA A. ROONEY, et al.,
                    Plaintiffs,

and
DANNY LEE MOZAK,
                    Plaintiff-Cross Appellant,

and

DAWN BURLEY, et al.,
                    Plaintiffs-Cross Appellants,

and

HARLEY ZEPHIER, SR.,
                    Plaintiff-Cross-Appellant,

3

and

JOHN DOES 1-433,
Plaintiffs-Cross Appellants,

and

JULIA DUMARCE, et al.,
Plaintiffs-Cross Appellants,

and

RAYMOND COURNOYER, SR., et al., JERRY ROBINETTE, et al.,
SANDRA KIMBELL, et al., CHARLENE WANNA, et al., and LESLIE
LEE FRENCH, et al.,
Plaintiffs-Cross Appellants,

and

KRISTINE ABRAHAMSON,
Plaintiff-Cross Appellant,

and

VICTORIA ROBERTSON VADNAIS,
Plaintiff-Cross Appellant,

v.

UNITED STATES,
Defendant-Appellant.

————————

I, Erick G. Kaardal, declares as follows:

4

1.    I am counsel for the Wolfchild Plaintiff-Cross-Appellants in

the instant action. I am familiar and have personal knowledge of the

facts contained in this declaration. My declaration is offered  in support

of the Wolfchild Plaintiffs-Cross Appellants Motion to Take Judicial

Notice of the United States Department of Interiors Notice of Decision,

dated August 20, 2012.

2.    Attached as **Exhibit A** is a copy of the 2012 Notice of

Decision. The Decision was not in our possession prior to January 29,

2013. The decision was actually found through as chance review of

documents found with the City of Shakopee, Minnesota on January 28th

by a Wolfchild client at our request, relating to a land transfer involving

amicus curiae Shakopee Mdewakanton Sioux Community. The Notice of

Decision authored by Diance K. Rosen, Regional Director of the Bureau

of Indian Affairs of the United States Department of the Interior. This

Notice of Decision was addressed to the Stanley Crooks, Chairman of

the Shakopee Mdewakanton Sioux Community (now deceased).

3.    I had no idea of the existence of the Notice of Decision before

January 29, 2013. Furthermore, there is no indication that either the

United States or the amici curiae presented this material for this

Court's review, or to the U.S. Court of Federal Claims, before my disclosure of the document in this Court through the motion for judicial notice.

4.     Upon receiving Interior's Notice of Decision on January 29, 2013, I immediately sought the consent of all parties to stipulate to this Court taking of judicial notice of this document.

5.     On January 30, 2013, I received a response from the counsel for the United States not giving consent to the motion.  Attached as Exhibit B is the email string associated with the United States not giving consent to this motion.

6.     However, the United States response, Exhibit B, states that the government does not dispute the authenticity of the document which is attached as Exhibit A.

7.     I have received only one response supporting my effort to stipulate to this Court taking judicial notice of Interior's Notice of Decision. As of the filing of this motion, I have not heard from other counsel of record (or those acting pro se to the extent I have been able to make an initial contact). Thus, I do not know whether the parties would support or oppose the motion for judicial notice.

I DECLARE UNDER PENALTY OF PERJURY THAT THE

FOREGOING IS TRUE AND CORRECT.

Dated: January 30, 2013

Erick G. Kaardal



**EXHIBIT**

A



# United States Department of the Interior

BUREAU OF INDIAN AFFAIRS
Midwest Regional Office
Norman Pointe II
5600 West American Boulevard, Suite 500
Bloomington, MN 55437



TAKE PRIDE
IN AMERICA

IN REPLY REFER TO:
Division of Fee to Trust
TR-4609-P5

**AUG 2 0 2012**

## NOTICE OF DECISION

Certified Mail - Return Receipt Requested – 9171 9690 0935 0001 8400 15

Honorable Stanley Crooks, Chairman
Shakopee Mdewakanton Sioux Community
2330 Sioux Trail NW
Prior Lake, Minnesota 55372

Dear Chairman Crooks:

This Notice of Decision is for an application from the Shakopee Mdewakanton Sioux Community of Minnesota (SMSC or Tribe) to have real property accepted by the United States of America in trust for the Shakopee Mdewakanton Sioux Community of Minnesota on property described as follows:

The former **Shutrop** property (F-411-2011-2555) described as the West ½ of the Southeast ¼ and Government Lot 3, all in Section 15, Township 115 North, Range 22 West, Scott County, Minnesota, containing 130.00 acres, more or less, Tax Parcel Nos. 27-915001-0 & 27-915001-1.

Federal law authorizes the Secretary of the Interior, or the authorized representative, to acquire land on behalf of the United States of America for the benefit of Indian Tribes. In this instance, the authorizing Act of Congress is the Indian Reorganization Act of June 18, 1934; 25 USC § 465. The applicable regulations are set forth in the Code of Federal Regulations, Title 25 Indians § 151.

The regulations specify that it is the Secretary's policy to accept lands "in trust" for the benefit of Tribes when such acquisition is authorized by an Act of Congress; and, (1) when such lands are within the exterior boundaries of the Tribe's reservation, or adjacent thereto, or within a Tribal consolidation area; or (2) when the Tribe already owns an interest in the land; or (3) when the Secretary determines that the land is necessary to facilitate Tribal self-determination, economic development, or Indian housing. This acquisition is within the land acquisition policy as set forth by the Secretary of the Interior.

In compliance with 25 CFR § 151.10, the City of Shakopee, Scott County, the State of Minnesota and the Minnesota Dept. of Transportation, Office of Aeronautics, were consulted to

solicit comments regarding "potential impacts" as a result of removal of this property from the tax rolls.

Our analysis, contained within this notice, includes and considers the comments received on behalf of the City of Shakopee (City) and Scott County (County) in addition to the applicant's responsive information.

It has been determined that the land is located adjacent to reservation land as defined in 25 CFR § 151.3(a)(1); therefore, the application qualifies for processing as on-reservation status.

Our review of the requirements to evaluate this Tribal request as set forth in 25 Code of Federal Regulations, § 151.10 (a) through (h), determined the following:

1) 25 CFR § 151.10 (a) – Statutory authority for the acquisition of the property.

In their comments, the County states that the Tribe's request for trust acquisition is contrary to the current law of the land (*Carcieri v. Salazar)*, particularly since the Tribe did not become federally recognized until 1969.[1]

The Shakopee Mdewakanton Sioux Community of Minnesota is organized in accordance with the Indian Reorganization Act of 1934 (IRA). Section 5 of the IRA, 25 U.S.C. § 465, authorizes the Secretary of the Interior discretionary authority to acquire any interest in lands for the purpose of providing lands for Indians.

On February 24, 2009, the United States Supreme Court issued its decision in *Carcieri v. Salazar*. The decision held that Congress granted limited authority to the Secretary of the Interior under the Indian Reorganization Act (IRA) to acquire land-in-trust for Indian tribes. To acquire land-in-trust under section 465 of the IRA, a tribe must have been "under Federal jurisdiction" at the time the IRA was passed in June 1934.

We find that the present day Tribe was previously federally recognized as part of the Lower Sioux Indian Community, which was officially organized under the IRA in 1936. Prior to 1934, the Tribe was officially known as the Mdewakanton Band of Sioux in Minnesota who entered into several treaties with the federal government. Departmental correspondence contemporaneous with the IRA shows irrefutably that the Shakopee Mdewakanton Band was under federal jurisdiction when the Act was passed.[2]

Additionally, by letter dated August 24, 2009, the Tribe provided supplemental information in support of its federal status in 1934. These materials were reviewed, considered, and made part of the record, including a copy of House of Representatives Report 99-298, dated October 2,

---

[1] Letter from Scott County received by BIA, November 29, 2011, p. 1-2.
[2] See letter from John Collier to Pine Ridge Agency dated November 27, 1935, and Felix Cohen, Solicitor's Opinion, November 23, 1935.

1985, and a Senate Report 99-115 dated, July 26, 1985, which document that the present day Tribe are the successors in interest to the historical Mdewakanton and Wahpekute Sioux tribes.

Based on our review, we have determined that the *Carcieri* decision is not implicated by this decision. Therefore, the request for trust acquisition is eligible for trust status under the authority of the IRA.

2) 25 CFR § 151.10 (b) – The need of the Tribe for additional land.

The County states that the purpose of the Indian Reorganization Act (Act) was to rehabilitate the Indian's economic life and to give him a chance to develop the initiative destroyed by a century of oppression and paternalism. According to the County, the SMSC have proven their economic success, thus, federal Indian policy has successfully achieved its goals and to grant the added advantage of trust status would be excessive and beyond the intent of the Act. The County goes on to state that the application fails to provide any information to support the Tribe's critical needs of energy diversity, sovereignty, and land consolidation.[3]

The regulation states that the Secretary will consider the Tribe's need for additional land, not whether the Tribe needs additional land held in trust. Also, Section 5 of the IRA indicates that the taking of land in trust is not limited to landless or impoverished Tribes. Thus, a financially secure tribe may also need additional trust land to facilitate self-determination, Indian housing and economic development, especially if the existing trust land base is already developed.

As stated in their application, the Tribe, motivated to consider other sources of energy, selected the Shutrop parcel to be used as a native biomass prairie. The land was selected for this project because the agricultural fields were primarily marginal crop land. The land includes wetland fringe around Dean's Lake and a woodland bluff. In 2008, this field was planted back into native prairie by Tribal staff, for use as a biomass source for Koda Energy, LLC (a cooperative enterprise owned by the Tribe and Rahr Malting Company). Koda energy provides heat and electricity for the adjacent malting plant and excess energy is sold to local power companies. McKenna Road, which is adjacent to the Shutrop property, is a partially tribal-funded roadway that provides the Tribe with access to two major county roads, CSAH 16 and CSAH 42, the McKenna Road water treatment plant, and Tribal member residential areas. In 2000, the Tribe provided funding to pave McKenna Road and in 2008, the Tribe also designed and funded an overlay on this road. Roadway maintenance is currently performed by the City of Shakopee.[4]

Acquisition of the subject parcel is needed to further support the Tribe's self-determination and economic development. Placement of this land in trust secures it against alienation, protects tribal investments and ensures the availability of land for governmental purposes.

3) 25 CFR § 151.10 (c) - Purpose for which the property will be used.

---

[3] Scott County comments received by BIA on November 29, 2011, p. 3.
[4] Tribe's application for trust status received by BIA on July 1, 2011, p. 2.

3

The subject property will be used for growing prairie grasses for biomass energy feedstock. This form of agriculture is suited to the subject parcel which currently has tallgrass prairie land cover. The Tribe has no plans for development of this land other than to produce suitable feedstock for Koda Energy, LLC.

4)    25 CFR § 151.10 (d) – Land acquired for an individual.

Land is being acquired for the Tribal Government not an individual.

5)    25 CFR § 151.10 (e) – Impact on the State and its political subdivisions resulting from the removal of this property from the tax rolls.

In their comments, the City states that acquisition of land in trust and removal of the property from the City's jurisdiction has substantial impacts with regards to land use and general planning for the City's future needs. The City also stated that the 2011 property taxes amounted to $16,355 and that there are no special assessments currently levied against the property. The City does not provide regular services to the subject property, but would provide police and fire service as necessitated by such calls for service. The City further stated that issues associated with trust acquisition would be best addressed through a global government-to-government agreement, rather than addressing applications on a piecemeal basis.[5]

Scott County states that the property taxes levied in 2011 amounted to $12,762.70, the proposed 2012 taxes amount to $14,056.13 and that there are no current special assessments levied against this property. The County does not exercise land use or other zoning controls over this parcel, but has some environmental regulatory function. Services currently provided by the County include law enforcement, correctional, prosecutorial and transportation (roads and transit) service to the subject parcel. Many of these services are in coordination and conjunction with the City of Shakopee.[6]

In our analysis to determine the loss of tax revenue to the City, we noted that the City's stated share of the 2011 tax levy was in the amount of $16,355.00. The actual amount of the City's share of the 2011 tax levy was $12,472.33. The impact of losing $12,472.33 of the City's 2011 budget ($33,215,760) is less than one percent (.03754%).

In comparison, the impact of losing $12,762.70 of Scott County's 2011 budget ($129,336,581) is also less than one percent (.009867%). Thus, the potential loss of tax revenue to be assumed by the City of Shakopee and Scott County as a result of trust acquisition of the subject parcel is deemed to be minimal.

---

[5] Letter from City of Shakopee received by BIA on Feb. 1, 2012.
[6] Letter from Scott County received by BIA on Nov. 29, 2011.

Over the years, the SMSC has been proactive in working with municipal, county and state governments in establishing cooperative agreements to work on joint projects for road construction, water and sewer agreements, equipment sharing, stormwater management, police and fire agreements, etc. With that in mind and in continuance of promoting cooperative relations with state and local governments, in February, 2012, the SMSC, along with the City of Shakopee, City of Prior Lake and Scott County, finalized a Memorandum of Understanding (MOU) to create an Inter-governmental Working Group (IWG) for the purpose of promoting productive and respectful government-to-government relations.

The purpose of this IWG is to build government-to-government relations in an effort to resolve and prevent conflicts of jurisdictional disputes quickly and efficiently in order to promote productive and respectful relations for present and future generations. The IWG will serve as a forum that the Governments will use to enhance intergovernmental relations relating to law enforcement, transportation, employment, taxation, economic development, due process and representation, education, natural resources, public service provision, land use and acquisition, fish and wildlife, healthcare, and environmental protection.[7]

The SMSC has a history of establishing inter-governmental agreements and making voluntary payments to local governments for the costs of services provided to the Tribe. Over the past 10 years the Tribe has paid approximately $14.4 million to the local governments for services or projects.[8] Some examples are as follows:

- Wellhead Protection MOU, executed in 2000 by the Tribe, US EPA, MN Dept. of Health, and the Cities of Shakopee and Prior Lake, for the safety of public water supply wells.
- Mutual Aid Fire Agreements, executed in 2004 by the Tribe, Cities of Shakopee, Prior Lake and Savage, for the authority and process for inter-jurisdictional emergency response.
- County Road 83, in 2008, costs were shared with Shakopee, Prior Lake, and Scott County for the re-construction to a 4-way divided roadway with a bituminous trail.
- County Road 83, in 2011, costs were once again shared to upgrade this road from County Road 41 to County Road 16. The Tribe paid more than 80% of this $1.8 million upgrade.
- Interchange at County Roads 41 & 17, in 2011, the City of Shakopee and Scott County agreed to reconstruct the most dangerous intersection in Scott County. The Tribe contributed $1.65 million towards this project.
- Eagle Creek Transit Station – Park & Ride. This project involved MN DOT, Federal Highway Administration, the Metropolitan Council, Scott County, the Cities of Shakopee and Prior Lake and the Tribe. The Tribe leased 12 acres of its lands to Scott County as part of its commitment to this project.

---

[7] MOU between the Government of the SMSC, City of Shakopee, City of Prior Lake, & Scott County, Feb/2012.
[8] SMSC response to City Comments, March 7, 2012, pg. 1-3.

Additionally, the Tribe has made the following intergovernmental payments over the past four years from 2008 to 2012[9]:

- $1,470,000 to the City of Prior Lake for police and fire services
- $1,050,000 to Scott County for Services
- $2,481,803 in property taxes on fee lands
- $123,782 for the SCALE Joint Training Facility
- $265,215 for County Road 83 overlay
- $1,810,531 for County Road 83 reconstruction to a four-lane roadway
- $614,715 to the Metropolitan Council for waste water treatment
- $392,989 for the County Road 82 reconstruction project
- Paid another $5 million for other intergovernmental projects
- Paid $12.7 million to local governments for services

The SMSC is the largest employer in Scott County and provides more than 4,130 (gaming and non-gaming) jobs. The Tribe's enterprises benefits Scott County's economy by employing 1,952 county residents with an annual payroll of $71.6 million and by utilizing Scott County based vendors. According to an economic impact study prepared in 2003 by Klas Robinson, Scott County benefits directly and indirectly by more than $196 million annually from the Tribe's operations[10]. The positive impacts of the contributions made by the SMSC to Scott County and other local jurisdictions, mitigates the costs associated with the loss of taxes to the County.

Based upon the above findings, we have determined that there will be no additional fiscal impacts on City or County services and that the economic and social benefits of the planned use of this property outweigh any minimal impact on the state or local political subdivisions.

6) 25 CFR § 151.10 (f) – Jurisdictional problems and potential conflicts of land use.

Scott County expressed concerns that with this parcel being taken into trust, any restriction on the City or County's ability to acquire necessary right-of-way along the McKenna Road corridor (as well as County Road 16) would present an inordinate encumbrance.

We have no information other than this statement on a right-of-way along McKenna Road corridor but do note the Tribe has shown they have worked diligently with Scott County and the City of Shakopee in establishing cooperative agreements to fund joint projects to upgrade roadways and intersections within Scott County. For example, in 1997, the County and the Community cooperated on the upgrade of County Road 21 where it abuts on tribal lands, in which the Tribe granted the County an easement over trust lands. In 2003, the Tribe and Scott County agreed to exchange land to provide right-of-way for the redesign of County Roads 16

---

[9] SMSC Four Year Report, 2008-2011, pg. 57.
[10] Letter from SMSC, dated January 20, 2012, "Reply to Scott County's Comments Pertaining to the Wazupi Gardens Parcel Filed with the Bureau of Indian Affairs on November 29, 2011", p. 7.

and 83. And, in 2009, the Tribe granted additional rights-of-way for the reconstruction of CSAH 83 south to CSAH 42 from a two lane to a four lane roadway; the extension of CSAH 21 from its intersection with CSAH 42 north to U.S. Highway 169; and to provide for a transit station located at the intersection of the extension of CSAH 21 and CSAH 16.[11]

The Tribe has developed regulations, programs and resources to include management of this property and is prepared to assert their tribal sovereignty with trust status. Services to the subject parcel are provided by the SMSC Land and Natural Resources Department, SMSC Public Works, and Mdewakanton Fire and Emergency Services. Once in trust status, jurisdictional issues will be more defined and clear since the County and City does not assert civil regulatory jurisdiction over tribal trust lands.

Public Law 280 passed by Congress in 1953 confers jurisdiction over criminal offenses in Indian Country to the State. As stated earlier, the City does not provide regular services to the subject parcel; however, they will provide police and fire services when necessary.

Scott County stated that they provide law enforcement services, correctional services, prosecutorial services, and transportation (roads and transit) services to the parcel, many in coordination or conjunction with the City of Shakopee. The County provides no specific information and further stated that they do not exercise land use or zoning controls over the subject parcel, but they do have some environmental regulatory function.[12]

The zoning for this property is Agricultural Preservation (AG) which is consistent with the current use of the parcel as a biomass prairie. However, the City states that their 2030 Comprehensive Plan guides this parcel for residential development, in which they state continued agricultural use, will pose conflicts with surrounding lands that develop as single-family residential areas.

Trust acquisition of the Shutrop parcel should not create any conflicts with adjacent land uses. This parcel is currently being used as a biomass prairie and meets the City's current zoning of agricultural preservation. Adjacent non-tribal lands located to the northwest is low-density residential and east are agricultural. Consolidation of trust lands will help alleviate the checkerboard of tribal fee and trust properties and clarify jurisdictional issues on this parcel of land. Based on the foregoing, we have determined that no additional jurisdictional problems or conflicts of land use are likely to result from the transfer of this property into trust status.

7) 25 CFR § 151.10 (g) – Is the Bureau of Indian Affairs (BIA) equipped to discharge the additional responsibilities and duties resulting from the acquisition of this land in trust status.

Pursuant to Public Law 93-638, as amended, the Tribe has negotiated an agreement to assume responsibilities of some programs, services, functions, and activities that normally are funded

---

[11] SMSC Agreements, updated 03/10/2012.
[12] Letter from Scott County, received by BIA on November 29, 2011.

7

and/or flow through the BIA. Programs that the Tribe has contracted to perform include Adult Education, Tribal Government, and Social Services.

This property will require only limited BIA management assistance particularly in oversight, through technical assistance, and functions that are inherent to the federal government. Specifically, the real property may require BIA technical assistance to provide rights protection, environmental services, leasing, rights-of-way, mortgages and BIA review and approval of transactions necessary in the fulfillment of the compact agreement.

In conclusion, based on the contemplated land use stated in this application for trust status, any additional responsibilities resulting from this transaction are deemed to be minimal. Therefore, it is our determination that acceptance of this property into trust status will not impose any significant additional responsibilities or burdens upon the BIA beyond those already inherent in the federal trusteeship over the existing reservation.

8) 25 CFR § 151.10 (h) – Environmental Hazards

We are required to determine the level of impact upon the human environment this undertaking would create pursuant to criteria outlined in the National Environmental Policy Act of 1969 (NEPA). The BIA guidelines for NEPA compliance are set forth in the Bureau of Indian Affairs NEPA Guidance, 59 IAM 3-H. Within 59 IAM 3-H, reference is made to actions qualifying as "Categorical Exclusions" (CATEX) which are listed in Part 561 of Interior Department Manual Chapter 10. The actions listed therein have been determined not to individually or cumulatively affect the quality of the human environment, and therefore, do not require the preparation of either an Environmental Assessment (EA) or an Environmental Impact Statement (EIS). A CATEX requires a qualifying action, in this case, 516 DM 10.5 I. <u>Land Conveyance and Other Transfers</u>: Approvals or grants of conveyances and other transfers of interests in land where no change in land use is planned. There are no changes in land use anticipated for the parcels proposed to be acquired and a CATEX is appropriate for the properties.

In compliance with Department of the Interior Guidance, Part 602 of Interior Department Manual Chapter 2, and the ECM 10-2 Pre-Acquisition Environmental Assessment Guidance for Federal Land Transactions, we are required to complete an Environmental Site Assessment (ESA) to determine if there are any environmental and contamination related concerns and/or liabilities affecting the land being considered for trust acquisition. These procedures comply with the standards of the American Society of Testing and Materials (ASTM) Practice, E1527-05, which were adopted by the Department of the Interior (DOI). A Phase 1 ESA has been completed for this property and no recognized environmental conditions; contamination related concerns or liabilities were identified. The final report recommended that no further environmental investigation was warranted. Since the completion of this Phase I ESA and the ECM 10-2, the BIA issued an interim policy, June 27, 2012, that removed the requirement for the completion of the ECM 10-2 portion of the environmental documentation. The removal of this portion of the documentation does not affect the final determination of the Phase 1 ESA that no further environmental investigation is necessary.

8

## CONCLUSION

After our review and analysis of the above application for land into trust, we conclude that the proposed acquisition of the 130.00 acre parcel would be in the best interest of the Tribe. Based on the foregoing, we issue this notice of intent to accept this real property in trust for the benefit and welfare of the Shakopee Mdewakanton Sioux Community of Minnesota provided the Tribe delivers a marketable title to the property and in a manner consistent with 25 CFR § 151, Land Acquisitions Regulations. The subject acquisition will vest title to the real property in the United States of America in trust for the Shakopee Mdewakanton Sioux Community of Minnesota in accordance with the Indian Reorganization Act of June 18, 1934; 25 USC § 465.

This decision may be appealed to the Interior Board of Indian Appeals, 801 North Quincy Street, Suite 300, Arlington, Virginia 22203, in accordance with 43 CFR §§ 4.310-4.340. Your notice of appeal to the Board **must be signed by you or your attorney and must be mailed within 30 days of the date that you receive this decision**. It should clearly identify the decision being appealed. If possible, attach a copy of the decision. You must send copies of your notice of appeal to (1) the Assistant Secretary – Indian Affairs, 1849 C Street, N.W., Washington, D.C. 20240; (2) each interested party known to you, and (3) this office. Your notice of appeal sent to the Board of Indian Appeals must certify that you have sent copies to these parties. If you file a notice of appeal, the Board of Indian Appeals will notify you of further appeal procedures.

If no appeal is timely filed, this decision will become final for the Department of the Interior at the expiration of the appeal period. No extension of time may be granted for filing a notice of appeal.

If any party receiving this Notice of Decision is aware of additional governmental entities that may be affected by the subject acquisition, please forward a copy of this notice to said party.

If you have any questions regarding this matter, please contact Diane Baker, Supervisory Realty Specialist, at (612) 725-4586.

Sincerely,

Diane K. Rosen

Regional Director

cc:  By Certified Mail – Return Receipt Requested To Interested Parties:

Gary L. Shelton, Interim County Administrator    9171 9690 0935 0001 8400 39
Office of the Administrator
Scott County Government Center
200 Fourth Avenue West
Shakopee, MN 55379-1220

Honorable Brad Tabke, Mayor    9171 9690 0935 0001 8400 46
City of Shakopee
129 Holmes Street
Shakopee, MN 55379

Honorable Mark Dayton    9171 9690 0935 0001 8400 53
Governor, State of Minnesota
130 State Capitol
75 Rev. Dr. Martin Luther King Jr. Blvd.
St. Paul, MN 55155

Minnesota Department of Transportation    9171 9690 0935 0001 8400 60
Attn: Director, Office of Aeronautics
222 East Plato Blvd., MS 410
St. Paul, MN 55107

cc:  Regular Mail

Mr. Stanley Ellison, Land Manager
Shakopee Mdewakanton Sioux Community
2330 Sioux Trial NW
Prior Lake, MN 55372

10

EXHIBIT

B

**Erick Kaardal**

| | |
|---|---|
| From: | Smeltzer, John (ENRD) [John.Smeltzer@usdoj.gov] |
| Sent: | Wednesday, January 30, 2013 3:47 PM |
| To: | Erick Kaardal; LEE DEGRAFF; Deryl Edwards; lakotagm@yahoo.com; Robin Zephier; Barry Hogan; kstriche@gmail.com; Randy Thompson; Scott Johnson; jpierce@bernicklifson.com; thurmanlaw@iw.net; liz@liz-walker.com; lleven6001@aol.com; Dave Balazs |
| Cc: | Schwarz, Jody (ENRD) |
| Subject: | RE: Wolfchild v. U.S. |

Hi Erick:

In response to your question, although we do not dispute (for judicial notice purposes) the authenticity of the 2012 Notice of Decision regarding the Shakopee Mdewakanton Sioux Community, we are not prepared to concede its relevance to the present appeals, and thus reserve the United States' right to object to any motion to supplement the record on appeal with this Notice of Decision or to provide supplemental argument regarding the 2012 Notice of Decision.

-- John

John L. Smeltzer
United States Department of Justice
Environment & Natural Resources Division Appellate Section Post Office Box 7415 Washington, DC 20044
(202) 305-0343
john.smeltzer@usdoj.gov

cc: Jody Schwarz

-----Original Message-----
From: Erick Kaardal [mailto:kaardal@mklaw.com]
Sent: Wednesday, January 30, 2013 8:42 AM
To: Smeltzer, John (ENRD); LEE DEGRAFF; Deryl Edwards; lakotagm@yahoo.com; Robin Zephier; Barry Hogan; kstriche@gmail.com; Randy Thompson; Scott Johnson; jpierce@bernicklifson.com; thurmanlaw@iw.net; liz@liz-walker.com; lleven6001@aol.com; Dave Balazs
Subject: Wolfchild v. U.S.

Dear all:

　　　　Yesterday, I received the attached 2012 Notice of Decision issued by Interior.  My clients want to move the Court to take judicial notice of this attached document. Rule 27 requires me to seek your consent prior to making the motion.

　　　　The substance of the motion is as follows.  The 2012 Notice of Decision was first received by my law firm on January 29, 2013. "Judicial notice may be taken at any time, including on appeal . because it is either '(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" United States. v. Burch, 169 F.3d 666, 671 (10th Cir. 1999) (citation omitted).  See also TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd., 488 F.3d 1282, 1298 (10th Cir. 2007) ("'[F]ederal courts . may take notice of proceedings in other courts, both within and without the federal judicial system,

if those proceedings have direct relation to matters at issue.'"  (quoting St. Louis
Baptist Temple, Inc. v. FDIC, 605 F.2d 1169, 1172 (10th Cir. 1979)). Under  25 U.S.C. § 2,
the Commissioner of Indian Affairs falls under the direct authority of  Interior. Further,
the Regional Director implements Interior's policy of acquiring land on behalf of the United
States for the benefit of Indian tribes under 25 CFR § 151. The Notice of Decision referenced
above has direct relation to matters at issue in the appeal because it discusses Interior's
position in 2012 recognizing the 1886 Mdewakanton Group as a Tribe as of 1934, a central
issue to this case, which the U.S. has steadfastly failed and refused to admit since the
inception of the instant case nine years ago.

        Please get back to me today on whether you consent or do otherwise.

egk

Erick G. Kaardal
Mohrman & Kaardal, P.A.
33 South Sixth Street, Suite 4100
Minneapolis MN 55402
612-341-1074
f. 612-341-1076